## Okrent, etc. v. Raffa.

(Decided December 16, 1924.)

### Appeal from Campbell Circuit Court.

1. Trial—Question for Jury, if Any Evidence.—If there is any evidence, question is for jury.

2.  Husband and Wife—Alienation of Wife's Affections Held for Jury.
    —Alienation of wife's affections by her aunt and latter's husband
    held for jury.
3.  Trial—Credibility of Evidence for Jury.—Credibility of evidence
    is for jury.
4.  Husband and Wife—Elements of and Facts Considered in Esti-
    mating, Damages for Alienation of Affections Stated.—In action
    for alienating wife's affections, plaintiff generally may recover for
    all direct and proximate losses caused by tort, for physical pain,
    if any, mental agony, lacerated feelings, etc.; but in estimating
    damages defendants' motives and state of spouse's affections at
    time of wrongful acts must be considered.
5.  Husband and Wife—$6,500.00 Held Excessive Damages for Aliena-
    tion of Wife's Affections.—Verdict for $6,500.00 for alienation of
    wife's affections held so excessive as to require new trial, in view
    of evidence of plaintiff's lack of affection for wife.

FRANK V. BENTON and C. W. YUNGBLUT for appellants.

GEORGE HEROLD for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

Sam Raffa brought this suit May 18, 1922, against
Joseph Okrent and his wife Ida Okrent.  He alleged that
they unlawfully, maliciously and wrongfully prejudiced
the mind of Edith Raffa, his wife, and Maurice, his son,
against him and so alienated her affection from him, and
induced his wife and son to refuse to live with him,
whereby he was deprived of the society, comfort and af-
fection of his wife and son to his damage in the sum of
$25,000.00.  The defendants filed answer controverting
the allegations of the petition.  On the trial of the case
there was a verdict and judgment in favor of the plain-
tiff for $6,500.00.  The defendants appeal.

It is insisted for the appellants that on the evidence
the court should have instructed the jury peremptorily
to find for the defendants, and that the verdict is clearly
against the evidence and the amount of recovery palpably
excessive.

Sam Raffa and his wife Edith were married in
Lechovitz, Russia, in June, 1911.  He had been married
once before and, leaving that wife in Russia, had gone to
South America.  There he secured a divorce from that
wife.  After this he returned to Russia and there mar-
ried Edith.  About seven months after their marriage he
left her in Russia and came to the United States, al-

though she did not wish him to leave Russia. Their son, Maurice, was born two months after he left. He lived at Newport, Kentucky. There were a number of other people there who had come from the same place in Russia. They were all Jews, including Raffa. In 1922 a collection was taken up in the Jewish church and among other Jews to enable Raffa to bring his wife and son to Newport. He added some money of his own and the wife and son arrived in Newport on April 28, 1922. He met them at the station and took them to the house of a friend where they had breakfast. There one of the neighbors telephoned to Mrs. Okrent, who was an aunt of Mrs. Raffa, that her niece had arrived. Mrs. Okrent said she was baking and could not come just then. Raffa owned a house and after breakfast he took his wife and son to the house. In a few minutes he left them there and went out to buy some things or make some arrangements. While he was gone Mrs. Okrent came to the house in her car. The proof varies as to the condition of things when she got there. According to the proof for Raffa the house had been cleaned and was nice and comfortable; according to the proof for the defendants the child was crying because he was cold, he and the mother were both in the bed with some blankets over them, the blankets were dirty and vermin were on the bed. According to the proof for Raffa, Mrs. Okrent took his wife and son away before he returned, but according to the proof for her, she sent the car after him and when he came back in the car she took his wife and son, by his consent, to her house, he going along in the car and then the car took him to his work. According to the proof of both, each had bought a chicken for dinner. Mrs. Okrent cancelled her order for chicken and at Raffa's suggestion took his chicken home with her and as both agree he was invited to dinner and did eat dinner there. The proof varies as to what happened there. He says that after supper he suggested to his wife to come and go home and Mrs. Okrent said she shouldn't go; that he and his wife went out on the porch together and Mrs. Okrent came to the door, got his wife by the arm and pulled her in and shut the door on him. According to the proof for the defendants Raffa, at the supper table, before his wife had finished eating supper, made an indecent proposal to his wife, she then took him in the next room and

remonstrated with him for saying such things in company and he then called her very ugly names and became boisterous. His wife told him that she was unwell after the manner of women, and could not go and do as he proposed. The son of Mrs. Okrent, who was present, told him he must not abuse his wife there and he then left. The next morning Mr. Okrent recevied a letter from Raffa's attorney threatening a law suit if his wife did not return to him. That afternoon Raffa and a friend came to Okrent's house and had an interview with his wife. The proof as to what occurred that afternoon is conflicting. The proof for the plaintiff tending to show that Mrs. Okrent was unwilling for Mrs. Raffa to go; the proof for the defendant tending to show that Mrs. Raffa said that she was worn out by her journey and would stay at Mrs. Okrent's over Sunday. He did not return to see his wife and on Monday morning the wife went to the house of Mrs. Rosen, who was from the same place in Russia and knew her. On Wednesday Raffa went there to see her. The proof is conflicting as to what occurred there, but the sum of it is that the wife refused to return with him. The next day she went to the house of her husband's nephew in Cincinnati and remained there until the following Friday, when her brother who lived in Indianapolis came for her and took her and the child to Indianapolis. There is no proof that the Okrents said or did anything after she left their house, and the proof for them is to the effect that they urged her to return to her husband when she left their house, but she said she would rather jump in the river. A few weeks later some Jewish friends induced Mrs. Raffa to come up from Indianapolis with a view to getting her and her husband together and affecting a reconciliation, but he refused to have anything to do with it. After the trial of this case the Jewish Rabbi, under an authority vested in the Rabbi by their customs, summoned the husband and wife both before him to have a conference with a view to adjusting their differences. The wife came, the husband refused to come and said he wanted the money he had sued for and not his wife.

There is evidence by several witnesses that Mrs. Okrent said that if Mrs. Raffa should come to this country that she did not want her to live with her husband;

that she did not like him, or that if his wife came she would not stay with him anyhow.

There is no proof that Mr. Okrent did anything or said anything, except two witnesses testify that Mr. Okrent said that as long as he lived he would not permit that Mrs. Raffa should live with Mr. Raffa and another witness testifies that he said if it cost him $2,000.00 he would never let her go back to Mr. Raffa.

We think it clear that the motion for a peremptory instruction as to Mrs. Okrent was properly overruled. As to Mr. Okrent we have had more difficulty, but in view of the Kentucky rule that if there is any evidence the question is for the jury the court concludes that there was some evidence, and that the case was properly submitted to the jury. He was present when everything occurred that happened at his house; he was the head of the family, what was said and done there was, under the evidence for the plaintiff, acquiesced in by him and this fact, coupled with the declarations, proved as made by him, was sufficient to take the case to the jury in view of the fact that it was shown that Mrs. Raffa met her husband affectionately at the depot and remained on the same terms with him until after she went to Okrent's house, and that she came away from that house opposed to living with him. While the evidence for the defendants explains how this happened, the credibility of this evidence is for the jury.

The rule as to the allowance of damages in this class of cases is thus stated in 13 R. C. L. 1481:

"As a general rule, the plaintiff may recover for all direct and proximate losses occasioned by the tort for the physical pain, if any inflicted; for his or her mental agony, lacerated feelings, wounded sensibilities, and the like. It is also a general rule in estimating the damages that each case must be determined by the circumstances attending it, and the motive of the intervening parties must be ever kept in view, as well as the existing state of the affections of the spouses at the time of the alleged wrongful acts of the defendant. Hence it is proper to show unhappy relations between the spouses or that the one whose affections are alleged to have

been alienated was wanting in affection for the plaintiff or that the plaintiff was wanting in affection for his or her spouse.''

The injury to the affections is the gist of the action.

The proof for the plaintiff is by no means satisfactory that he deeply loved his wife. His whole conduct, rather leaves the impression that he was thinking of himself rather than of her comfort. To say the least of it his conduct indicated a want of that patience and forbearance that love will prompt between a husband and a wife. She had not seen him for ten years. While he had sent her some money from time to time, the indications are that much of it did not reach her and that the amounts that were sent were small, considering the circumstances in which she and the child were placed, and under all the facts the judgment for $6,500.00 is out of keeping with the loss really sustained by the plaintiff. In Peck v. Taylor, 34 S. W. 705, the court held a verdict of $5,000.00 to be excessive. While that case was not like this case, the verdict for $6,500.00 is fully as excessive under the facts shown as $5,000.00 was there.

Under all the facts, the court concludes that the ends of justice require a new trial. Judgment reversed.